UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 11-89-GWU

MARY HIATT, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

Mary Hiatt brought this action to obtain judicial review of an administrative denial decision on her applications for Disability Insurance Benefits and for Supplemental Security Income. The case is before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1. Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2. If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

1

3.	The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments). If so, disability is conclusively presumed and benefits are awarded.

4.	At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work. If so, the claimant is not disabled and the claim is denied. If the plaintiff carries this burden, a prima facie case of disability is established.

5.	If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform,

11-89  Mary Hiatt

then an award of benefits may, under certain circumstances, be had. E.g., <u>Faucher v. Secretary of Health and Human Services</u>, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

      One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

      However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental

4

contaminants . . . rote application of the grid [guidelines] is inappropriate . . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Id. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The Administrative Law Judge (ALJ) concluded that Hiatt, a former cashier and fast food restaurant manager and assistant manager, suffered from impairments related to obesity, chronic headaches of undetermined origin in the right temporal and right parietal region, non-critical coronary artery disease, and right facial hyperalgesia. (Tr. 20, 27). Despite the plaintiff's impairments, the ALJ determined that she retained the residual functional capacity to perform a restricted

range of light level work.  (Tr. 23-24).  Since the claimant would be able to return to her past relevant work, she could not be considered totally disabled.  (Tr. 27).

After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence.  Therefore, the court must grant the defendant's summary judgment motion and deny that of the plaintiff.

In determining that Hiatt could still perform her past work, the ALJ relied heavily upon the testimony of Vocational Expert Joyce Forrest.  Forrest testified that the plaintiff's past work as a cashier was classed as light in exertion and unskilled while the fast food managerial work had been light and skilled.  (Tr. 72).  The hypothetical question presented by the ALJ included an exertional limitation to light level work, restricted from a full range by such non-exertional restrictions as:  (1) an inability to more than occasionally stoop, kneel, crouch, and climb ramps or stairs; (2) an inability to ever crawl and climb ladders, ropes or scaffolds; (3) a need to avoid concentrated exposure to extreme cold; and (4) a need to avoid moderate exposure to extreme heat, humidity, full-body vibration, fumes, odors, dust, gases and hazards such as unprotected heights or dangerous machinery.  (Tr. 72-73).  In response, the witness reported that the claimant's past relevant cashiering and managerial work could still be performed.  (Tr. 73).  Therefore, assuming that the vocational factors considered by Forrest fairly characterized Hiatt's condition, then

a finding of disabled status, within the meaning of the Social Security Act, is precluded.

The hypothetical question fairly depicted Hiatt's physical condition as required by <u>Varley</u>.  Dr. Sudhideb Mukherjee (Tr. 331-338) and Dr. Allan Dawson (Tr. 392-399) each reviewed the record and opined that the plaintiff would be limited to light level work, restricted from a full range by inability to more than occasionally climb ladders, ropes or scaffolds, a need to avoid moderate exposure to extreme heat, humidity, vibration, environmental pollutants, or hazards and a need to avoid concentrated exposure to extreme cold.  The extensive restrictions of the hypothetical question were consistent with these opinions.  No treating or examining source, including the staff at Medical Specialists of Kentucky (Tr. 239-306, 416-430), the staff at the Annville Medical Clinic (Tr. 307-311, 408-415), Dr. Alam Khan (Tr. 312-323, 339-350), and Dr. Tarvez Tucker (Tr. 324-330, 351-356, 400-407, 431-437) identified the existence of more severe physical limitations than those found by the ALJ.  These reports provide substantial evidence to support the administrative decision.

The ALJ properly determined that Hiatt did not suffer from a "severe" mental impairment.  Psychologist Cristi Hundley examined the plaintiff and diagnosed a depressive disorder versus a seasonal affective disorder.  (Tr. 362).  The examiner imposed no specific mental limitations and noted that "her presentation during this

evaluation did not suggest a mental health reason which would prevent her from being employed." (Tr. 363). Psychologists Ilze Sillers (Tr. 364) and Jan Jacobson (Tr. 378) each reviewed the record and opined that the claimant did not suffer from a "severe" mental impairment. Therefore, the evidence of record does not support the existence of a "severe" mental impairment.

Hiatt asserts that the ALJ erred in evaluating her pain complaints. Pain complaints are to be evaluated under the standards announced in <u>Duncan v. Secretary of Health and Human Services</u>, 801 F.2d 847, 853 (6th Cir. 1986): there must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

In the present action, Hiatt was found to be suffering from a potentially painful condition. However, even if she could be found to have satisfied the first prong of the so-called <u>Duncan</u> test, the claimant does not meet either of the alternative second prongs. The ALJ indicated that headaches were the claimant's main problem. (Tr. 24, 229). The ALJ noted that an MRI scan had revealed a "little bit of left frontal white matter abnormalities" which were said to be non-specific. (Tr. 24, 404). Dr. Tucker reported that a CT scan had been normal. (Tr. 24, 328). The claimant denied migraine headache symptoms such as photophobia, phonophobia,

osmophobia, nausea or vomiting.  (Tr. 24, 354).  Dr. Khan reported only an "incidental" left frontal gliosis with no correlation with current symptoms.  (Tr. 24, 322).  The ALJ also reported that while Hiatt's condition caused her to take longer to complete her daily activities, she still reported getting her husband up and off to work, assisting her granddaughter with school projects, sewing, caring for family pets, going out to eat occasionally, performing general housework such as doing the laundry and washing the dishes, cooking small meals and shopping for groceries.  (Tr. 25-26, 53-59, 61-62, 195-199).  As previously noted, no physician of record reported the existence of more severe physical restrictions than those found by the ALJ.  Thus, the medical evidence does not appear sufficient to confirm the severity of the alleged pain and objective medical evidence would not appear to be consistent with the plaintiff's claims of disabling pain.  Therefore, the ALJ would appear to have properly evaluated Hiatt's pain complaints.

Hiatt also argues that the ALJ erred by failing to consider the combination of her impairments.  However, the plaintiff has failed to specify how the ALJ erred on this point.  The court has already found that the hypothetical factors fairly depicted the claimant's condition.  Thus, the ALJ implicitly considered all of Hiatt's impairments in proper combination.

Finally, Hiatt asserts that her medical problems would prevent her from maintaining employment and, so, she could not meet the duration requirements for

11-89  Mary Hiatt

substantial gainful activity.  The plaintiff cites the Ninth Circuit Court of Appeals case of <u>Gatliff v. Commissioner of Social Security</u>, 172 F.3d 690 (9th Cir. 1999).  However, in <u>Gatliff</u>, the record contained considerable evidence that the claimant would not be able to maintain employment more than a couple of months and the ALJ had even acknowledged this fact.  <u>Gatliff</u>, 172 F.3d at 692.  In the present action, Hiatt has not identified similar evidence suggesting that she would not be able to maintain employment.  Therefore, the court must reject the plaintiff's argument.

      The undersigned concludes that the administrative decision should be affirmed.  A separate judgment and order will be entered simultaneously consistent with this opinion.

      This the 30th day of December, 2011.

Signed By:

<u>G. Wix Unthank</u>

**United States Senior Judge**